IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEFFREY CROSS and<br>PAMELA CROSS,<br><br>v.<br><br>EQUITYEXPERTS.ORG, LLC,<br>d/b/a EQUITY EXPERTS<br><br>Defendant. | Civil Action No.<br><br>_____ |

# COMPLAINT FOR DAMAGES

## INTRODUCTION

1. This is an action for damages against Defendant for violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., and supplemental state law claims.

## SUBJECT MATTER JURISDICTION

2. Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1337 (federal question jurisdiction).

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

4. This court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiffs' state law claims as they are so related to Plaintiffs' federal question claim that they form part of the same case or controversy.

## PARTIES AND PERSONAL JURISDICTION

5. Plaintiffs are residents of this State, District and Division and are authorized by law to bring this action.

6. Plaintiffs are residents of Cobb County, Georgia.

7. Defendant EQUITYEXPERTS.ORG, LLC is a limited liability company organized under the laws of the State of Michigan. [Hereinafter, said Defendant is referred to as "EQUITY."]

8. EQUITY is subject to the jurisdiction and venue of this Court.

9. EQUITY may be served by personal service upon its registered agent in the State of Michigan, to wit: Michael Novak, 2000 Town Center, Suite 1900, #1200, Southfield, Michigan 48075.

10. The address given as EQUITY's registered office is actually a "virtual office rental" offered by the Regus company.

11. The address given as EQUITY's "corporate office" in Michigan (i.e., 6632 Telegraph Rd #339, Bloomfield Hills, MI 48301) is a UPS store.

12. Accordingly, EQUITY may be served by personal service upon its registered agent or officers wherever they may be found.

13. Although EQUITY's website claims to have a place of business in Georgia, this claim is false.

14. EQUITY has not qualified to do business in Georgia with the Georgia Secretary of State's office.

15. The alleged office address (to wit: 1075 Peachtree St NE, No. 3650, Atlanta, GA 30309) is actually a "virtual office" maintained by a company called "ServCorp."

16. EQUITY does not maintain a place of business in Georgia.

17. EQUITY does not keep assets in Georgia.

18. The principal purpose of EQUITY's business is the collection of debts.

19. EQUITY specializes in collecting amounts assessed by homeowners associations from the residents of said homeowners associations.

20. EQUITY regularly uses the mail and telephones in its business.

21. EQUITY regularly collects or attempts to collect debts owed or allegedly owed to another.

22. EQUITY routinely sends letters though the U.S. mail in an effort to collect debts alleged to be owed to its clients.

23. EQUITY routinely files documents upon the property records throughout the United States, and specifically in various Georgia counties, in an effort to collect debts alleged to be owed its clients.

24. EQUITY routinely retains counsel on behalf of its clients.

25. EQUITY routinely employs counsel to sign liens and to conduct collection litigation in various states throughout the United States.

26. EQUITY directs and controls the action of said counsel in efforts to collect fees alleged to be due and owing to its homeowners association clients.

27. EQUITY is a "debt collector" as defined in the FDCPA.

28. At all times material to the allegations of this complaint, EQUITY was acting as a debt collector with respect to the collection of Plaintiffs' alleged debt.

29. Other Defendants may be discovered in the course of litigation, and plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS COMMON TO ALL COUNTS

30. Plaintiffs are the recorded owners of real property, their single-family home, located in Cobb County, Georgia (the "Home").

31. Defendant EQUITY was attempting to collect a debt from Plaintiff that allegedly arose from Plaintiffs' obligation to pay assessments and fees imposed by the homeowners association of the Camden Pointe subdivision in which Plaintiffs reside.

32. This debt arose for family, personal and household purposes.

33. This claimed debt arose from an erroneous homeowners association assessment relating to the mailbox at Plaintiffs' residence.

34. This error has spun out of control and has resulted in the filing of a lien, extensive collection activity and the filing of a civil action in Cobb State Court.

35. On the records of EQUITY itself, EQUITY acknowledges that they have been on notice of the fact that the mailbox charge was in error since 2014.

36. This has resulted in the compounding of a simple error over a mailbox with the continuing addition of collection fees by EQUITY into an uncontrolled avalanche of collection activity.

37. Plaintiffs throughout this process continued to pay their annual association dues as they came due.

38. The Georgia statute governing the collection of homeowners association assessments provides that "[t]o the extent provided in the covenants, the obligation for the payment of assessments and fees arising from covenants shall include the costs of collection, including reasonable attorney's fees actually incurred." O.C.G.A. section 44-5-60(e).

39. The applicable Declaration of Restrictive Covenants provides that the assessments "together with interest, costs, and reasonable attorney fees[] shall be a charge on the land and a continuing lien[.]"

40. The Georgia Court of Appeals has held that "no Georgia court has ever approved the recovery of nonlegal or administrative expenses as the 'costs of collection'" Long v. Hogan, 289 Ga. App. 347, 656 S.E.2d 868 (2008).

41. All sums added to the alleged principal in this action cannot be legally collected.

42. On or about October 30, 2014, a CLAIM OF LIEN ("LIEN") was filed on the Cobb County real property records which stated, in part, that "Camden Pointe Homeowners Association, Inc. . . . claims a lien for unpaid association dues and/or assessments, fees, and costs in the amount of $1,218.20" against Plaintiffs and their home.

43. The amount included in the LIEN included the erroneous mail box assessment and additional illegal collection fees.

44. Although the document bears a preparation date of October 22, 2014, it was notarized in Georgia nearly a week later on October 28, 2014.

45. The LIEN was signed by an attorney in Georgia.

46. Beneath the attorney's signature, the LIEN describes the attorney as an "authorized representative of Equity Experts, LLC, disclosed agent for Camden Point Homeowners Association, Inc."

47. The LIEN sought a sum that was not owed.

48. It appears that the LIEN was prepared by EQUITY.

49. The LIEN is similar in format and style to other liens formerly employed by EQUITY when EQUITY did not use local counsel to sign liens.

50. The LIEN was filed by an "authorized representative of Equity Experts, LLC."

51. When EQUITY recorded the LIEN with the Cobb County Superior Court Clerk's lien records, it contained known factual errors which falsely impugned Plaintiffs' title to their Home.

52. When EQUITY recorded the LIEN with the Cobb County Superior Court Clerk's lien records, it contained known factual errors which maliciously impugned Plaintiff's title to their Home.

53. EQUITY published in the Cobb County Superior Court Clerk's lien records, slanderous words that were false and malicious when published.

54. Plaintiffs' held title and were in possession of their Home at the time of the slanderous publication.

55. Earlier in 2017, Plaintiffs attempted to re-finance real property on favorable economic terms.

56. In the course of the attempts to secure re-financing, the LIEN was reviewed by and re-published to at least one prospective lender.

57. As a result of the LIEN, Plaintiffs were not able to go forward with re-financing in spite of the fact that they were otherwise qualified.

58. As a result of the actions of EQUITY, the Plaintiffs have been economically damaged in a specific amount capable of calculation by the loss of the opportunity to re-finance on favorable terms.

59. Plaintiffs' have suffered special damages.

60. EQUITY's actions constitute a slander of title to Plaintiffs Home.

61. After several years of collection activity, on or about September 29, 2016, a Georgia attorney, acting at the direction of EQUITY, filed suit in Cobb County State Court against Plaintiffs to collect the alleged debt. [Hereinafter referred to as "COLLECTION ACTION."]

62. At the time of the COLLECTION ACTION, with the addition of various collection fees, the amount of the alleged debt was claimed to have grown to $2,802.02.

63. Since Plaintiffs had paid their annual homeowners assessment as they came due, the increase in the amount sought is composed entirely of illegal collection fees.

64. Attached to the complaint in the COLLECTION ACTION was a statement with the heading:

> EQUITY EXPERTS
> 6632 Telegraph RD. Suite #339
> Bloomfield Hills, MI 48301
> PHONE 261-601-6766

65. EQUITY's statement attached to the complaint how shows that the initial balance has been reduced to $548.20 as of January 22, 2015.

66. EQUITY's statement also shows the addition of fees of $708.00 for "COLLECTIONS REMAIN" and $1495.00 for 'INTENT TO FORECLOSE."

67. These fees are illegal.

68. These fees are not due and owing.

69. The COLLECTION ACTION did not seek foreclosure.

70. To the extent that there may be some legal argument for the application of these fees in some circumstances, these fees are not justified in these particular circumstances.

71. Said fees are not justified when the underlying principal claim is erroneously demanded.

72. EQUITY's statement also shows that Plaintiffs continue to pay the amount of their annual assessment.

73. Plaintiffs incurred attorney fees to hire counsel to defend the COLLECTION ACTION.

74. Plaintiffs answered and filed discovery requests in the COLLECTION ACTION.

75. Despite the unwarranted litigation, Plaintiffs had become hopeful that the ongoing dispute between them and EQUITY may finally be resolved by the COLLECTION ACTION.

76. Before the deadline to answer discovery in the COLLECTION ACTION, EQUITY directed the attorney it had hired to conduct the COLLECTION ACTION to voluntarily dismiss the COLLECTION ACTION.

77. EQUITY files cases in which it does not have sufficient evidence to support a verdict and misleads unsophisticated consumers into believing that it has the ability to pursue its case to a judgment in litigation.

78. EQUITY knew at the time it filed the COLLECTION ACTION that it did not have the actual evidence nor ability to obtain the actual evidence necessary to prove its case.

79. EQUITY knew that it could not obtain evidence necessary to make out its *prima facie* case.

80. The COLLECTION ACTION was "scattershot" litigation to coerce Plaintiffs into paying debts when EQUITY knew, or should have known, at the time it filed the lawsuit that it could not prevail if the matter was taken to trial.

81. The COLLECTION ACTION was an attempt to coerce Plaintiffs into settling the alleged debt which Plaintiffs did not owe or to obtain a default judgment.

82. Such conduct violates the Fair Debt Collection Practices Act. Kuria v. Palisades Acquisition XVI, LLC, 752 F.Supp.2d 1293 (N.D.Ga. 2010); Samuels v. Midland Funding, LLC, 921 F.Supp.2d 1321 (S.D.Ala. 2013); *see also* Consumer Financial Protection Bureau v. Frederick J. Hanna & Associates, P.C., 1:14-cv-2211-AT, Docket Entry 43 (N.D.Ga. 2015) (practice of producing debt collection lawsuits without any meaningful attorney oversight into the merits violates the FDCPA).

83. While the COLLECTION ACTION was pending, on or about December 16, 2016, EQUITY initiated a telephone call directly to Mr. Cross and left a voice mail message.

84. The voice mail message referenced in the preceding paragraph stated "Good morning. This message is for Jeffrey Cross. Jeffrey, my name is Rebecca with Equity Experts.  Please give me a call in my office at 855 321 3973."

85. On or about December 20, 2016, Jeffrey Cross called the telephone number left in the voice mail message.

86. Mr. Cross spoke with a person identifying herself as "Rebecca."

87. "Rebecca" was able to look up Mr. Cross' case information by using his address.

88. "Rebecca" said she had called to try to settle a debt and stated that Mr. & Mrs. Cross owed $2,802.00.

89. Mr. Cross inquired if EQUITY was aware that this matter was in active litigation and that Mr. Cross was represented by counsel.

90. "Rebecca" acknowledged that EQUITY had counsel representing it in Georgia and acknowledged that its system notes show that Mr. Cross had been served with process.

91. "Rebecca" denied knowledge that Mr. Cross was represented.

92. Mr. Cross advised "Rebecca" to consult with EQUITY's Georgia counsel to confirm his representation.

93. On or about January 9, 2017, EQUITY initiated another telephone call directly to Mr. Cross and left a voice mail message.

94. The voice mail message referenced in the preceding paragraph stated "Good morning. This message is for Jeffrey. Jeffrey, my name is Rebecca with Equity Experts. Please give me a call in my office at 855 321 3973."

95. As recently as September of 2017 EQUITY has contacted Plaintiffs, leaving a voicemail asking for a return phone call despite knowing that Plaintiffs are represented by counsel.

96. All of the phone calls identified as coming from a generic and unregistered d/b/a "Equity Experts," and none of the phone calls referred to the actual name Equityexperts.org, LLC in order to meaningfully provide Plaintiffs with the true identity of the caller.

97. At no time did Plaintiffs nor Plaintiffs' attorney consent to direct communications between EQUITY and any Plaintiff.

98. At no time did any court of competent jurisdiction give express permission for direct communications between EQUITY and any Plaintiff.

99. All collection actions directed by EQUITY to Plaintiffs were intended to cause emotional distress and uncertainty as to future events in order to coerce Plaintiffs into paying the debt along with the falsely inflated sums that were not legally due and owing.

100. The acts of EQUITY have in fact caused Plaintiffs to unjustly experience emotional distress and concern.

101. EQUITY's actions were the result of intentional planning.

102. Defendant EQUITY's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

103. Plaintiffs have complied with all conditions precedent to bring this action against EQUITY.

## CAUSES OF ACTION

### COUNT ONE: FAIR DEBT COLLECTION PRACTICES ACT

104. The acts of Defendant constitute violations of the Fair Debt Collection Practices Act.

105. Defendant's violations of the FDCPA include, but are not limited to, the following:

106. Communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt, in violation of 15 U.S.C. section 1692c(a)(2);

107. Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person, in violation of 15 U.S.C. § 1692d;

108. The placement of phone calls without meaningful disclosure of the caller's identity, in violation of 15 U.S.C. § 1692d(6);

109. The use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e;

110. The false representation of the character, amount or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

111. The threat to take any action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5);

112. The use of any false representations or deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692e(10);

113. The failure to provide the disclosures required by 15 U.S.C. § 1692e(11);

114. The use of unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; and

115. Attempting to collect amounts which are not owed, in violation of 15 U.S.C. § 1692f(1);

116. As a result of the above violations of the FDCPA, Plaintiff is entitled to an award of 1) actual damages, including special damages and general damages for worry, concern, anxiety and emotional distress, 2) statutory damages, as well as 3) an award of costs and attorney fees.

### COUNT TWO: GEORGIA FAIR BUSINESS PRACTICES ACT

117. EQUITY's actions, including without limitation, each of the specific enumerated FDCPA violations referenced above as well as the general use of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce, constitute violations of Georgia's Fair Business Practices Act.

118. The conduct of EQUITY is the direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, said Defendant is liable to the Plaintiff for the full amount of actual, treble and

exemplary damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT THREE: VIOLATION OF STATE TORT LAW

119. EQUITY has published libelous or slanderous words which have falsely and maliciously impugned Plaintiffs' title in to an estate in land directly and proximately causing Plaintiffs to suffer special damages constituting a slander of title.

120. The individual and combined acts of EQUITY and its agents constitute abusive collection, tortious infliction of emotional distress, slander of title and invasion of privacy under State law.

121. As a result of defendant's actions, Plaintiff is entitled to relief including, but not limited to, 1) special damages, 2) actual damages, including the return of any overpayment and general damages for worry, concern, anxiety and emotional distress, 3) costs, 4) a reasonable attorney's fee, and 5) an award of punitive damages to penalize and punish defendant and to deter defendant from repeating such actions again in the future.

122. In the event that this Court finds that Defendant has acted in bad faith, been stubbornly litigious and/or caused Plaintiff unnecessary trouble and expense,

Plaintiff requests an award of the expenses of litigation, including a reasonable attorney's fee, pursuant to O.C.G.A. § 13-6-11.

## JURY TRIAL DEMAND

123. Plaintiff demands trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

124. Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS RESPECTFULLY PRAY THAT JUDGMENT BE ENTERED AGAINST DEFENDANTS AND IN FAVOR OF PLAINTIFFS, AS FOLLOWS:

a) That Plaintiffs be awarded special, actual, statutory, punitive, exemplary and treble damages;

b) That Plaintiffs be awarded the costs and expenses of litigation including a reasonable attorney fee;

c) That the Court grant such further and additional relief as is just in the circumstances.

Respectfully submitted,

                                SKAAR & FEAGLE, LLP

                by:    /s/ James M. Feagle
                        James M. Feagle
                        Georgia Bar No. 256916
                        jfeagle@skaarandfeagle.com
                        Cliff R. Dorsen
                        Georgia Bar No. 149254
                        cdorsen@skaarandfeagle.com
                        2374 Main Street, Suite B
                        Tucker, GA 30084
                        404 / 373-1970
                        404 / 601-1855 fax

Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855

ATTORNEYS FOR PLAINTIFFS