## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY CROSS, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION FILE NO.: |
| v. | : | 1:17-CV-3804-AT-JCF |
| | : | |
| EQUITYEXPERTS.ORG, LLC, | : | |
| | : | |
| Defendant. | : | |

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on the Motion For Default Judgment filed by Jeffrey Cross ("Mr. Cross") and Pamela Cross ("Ms. Cross") (collectively, "Plaintiffs"). (Doc. 12).

## Factual And Procedural History

Equityexperts.org, LLC ("Defendant" or "Equity Experts") is an entity incorporated in Michigan whose principal purpose of business is debt collection. (Doc. 1 ¶¶ 7, 18). Defendant regularly uses the mail and telephone in its attempts to collect debts owed by another. (*Id.* ¶ 21). Defendant's specialty is the collection of debts owed to homeowner's associations ("HOA"). (*Id.* ¶ 19). Plaintiffs are Georgia residents and own a home located in the subdivision of Camden Pointe, which is in Cobb County, Georgia and is subject to a covenant enforced by an HOA. (*Id.* ¶¶ 5, 30; Doc. 12-4 ¶ 8). The underlying dispute arose from an erroneous HOA

assessment associated with Plaintiffs' mailbox. (Doc. 12-4 ¶ 9). After resolving the issue, Plaintiffs continued to remit their annual homeowners' association assessments. (Doc. 1 ¶ 37). Despite Plaintiffs' resolution of the underlying matter with the HOA, on October 30, 2014, an attorney acting as an "authorized representative of [Defendant]" filed a lien on Plaintiffs' property in the Cobb County real property records. (*Id.* ¶ 50; *see also id.* ¶¶ 42, 45-46; Doc. 15-7 at 4; Doc. 15-9 at 1). The lien was based on "erroneous charges and assessments, misapplied payments, and [] additional illegal collection fees." (Doc. 12-4 ¶ 14).

On September 29, 2016, Equity Experts sued Plaintiffs in the State Court of Cobb County attempting to collect an alleged debt of $2,802.02, which included collection fees in addition to the amount of the underlying erroneous assessment. (Doc. 1 ¶¶ 61-62). The statement attached to Equity Experts' state court complaint indicated a balance due of $548.20, an amount of $708.00 itemized as "COLLECTIONS REMAIN," and an amount of $1495.00 itemized as "INTENT TO FORECLOSE." (*Id.* ¶¶ 65-66). However, Equity Experts' complaint did not seek foreclosure. (*Id.* ¶ 69). Before the end of discovery in the state court case, Equity Experts voluntarily dismissed its complaint. (*Id.* ¶ 76). At the time it filed its state court complaint, Equity Experts did not have the actual evidence necessary to prove the case. (*Id.* ¶ 78).

While its collection action was pending, Equity Experts' employee called Plaintiffs directly at their home and left a voicemail. (*Id.* ¶¶ 83-84). Equity Experts' employee identified herself as "Rebecca" and directed Mr. Cross to call her back. (*Id.* ¶ 84). Mr. Cross called the number left on the voicemail, and Rebecca answered. (*Id.* ¶ 86). Rebecca informed Mr. Cross that she had called trying to settle a debt, which she stated amounted to $2,802.00. (*Id.* ¶ 88). Mr. Cross told her he was represented by counsel and the alleged debt was the subject of active litigation. (*Id.* ¶ 89). Rebecca denied knowledge that Mr. Cross was represented by counsel but stated that her notes confirmed that a collection lawsuit had been filed. (*Id.* ¶¶ 90-91). On January 9, 2017, Rebecca again called Mr. Cross directly, leaving a voicemail requesting a call back. (*Id.* ¶ 94). Defendant continued to contact Mr. Cross directly through its employees, most recently in September 2017, even after being informed that he was represented by counsel. (*Id.* ¶¶ 95, 98; *see also* Doc. 12-4 ¶ 47). Defendant also directed Plaintiffs' HOA to cut off access to their amenities in order to get them to pay. (*Id.* ¶ 99; Doc. 17 ("Hearing Tr.") at 11:13-16).

In 2017, Plaintiffs began the process of refinancing their home to pay off $40,000 of consumer credit card debt, which carried an interest rate of 12.99%. (*Id.* ¶ 55). They were in the process of qualifying for a second mortgage at a rate of 4.432% until their lender discovered the lien Defendant had placed on their property. (*Id.* ¶ 55; *see also* Doc. 1 ¶¶ 55-56, Doc. 16 at 5). The lien was later released in

3

March 2017, a fact discovered by Plaintiffs' counsel on August 22, 2018.  (*See* Doc. 16 at 4).

Plaintiffs filed this action on September 28, 2017, alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 *et seq.*, as well as state law claims for slander of title, abusive collection, invasion of privacy, and "tortious infliction of emotional distress."  (*See* Doc. 1 ¶¶ 104-122).  Plaintiffs' Complaint alleges general damages in the form of "emotional distress, including anxiety, worry, stress, embarrassment, frustration, humiliation, loss of sleep, and loss of enjoyment and social opportunity."  (Doc. 12-1 at 18; Doc. 12-1 at 18-23). Plaintiffs also seek special damages resulting from Defendant's role in directing the HOA to deny them access to neighborhood facilities, expenses incurred defending Defendant's state court collection lawsuit, and the lost opportunity to obtain a more favorable interest rate due Defendant's lien.  (Doc. 1 ¶¶ 58-59, 116; Doc. 12-1 at 18).  Plaintiffs also seek statutory damages for Defendant's violations of the FDCPA and treble damages under O.C.G.A. § 10-1-399.  (Doc. 12-1 at 25-28).  Finally, Plaintiffs seek punitive damages, attorney's fees, and costs.  (*Id.* at 30-31).

Defendant's answer was due on April 18, 2018 as shown in Plaintiffs' return of service, filed on March 29, 2018 (Doc. 7).  Defendant did not answer Plaintiffs' Complaint.  The Clerk entered default as to Defendant on May 8, 2018, (*see* Minute

Entry entered May 8, 2018), and Defendant thereby admitted Plaintiffs' well-pled allegations. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *see also Glover v. Manny's Tex. Style Bar-Be-Que, Inc.*, No. 1:05-cv-3244-WSD, 2006 U.S. Dist. LEXIS 39389, at *2 (N.D. Ga. June 14, 2006) ("Upon entry of default, the well-pleaded allegations of the complaint are to be accepted as true[.]").  Plaintiffs then filed the instant Motion For Default Judgment on June 21, 2018.  (Doc. 12).  The undersigned directed Defendant to file a response to Plaintiffs' motion showing cause why default judgment should not be entered (Doc. 13), but Defendant did not respond.  In that Order, the undersigned also directed the parties to appear at a hearing on August 23, 2018.  (*Id.* at 2).  Plaintiffs appeared before the undersigned on that date, submitting exhibits in support of their motion and testifying as to damages.  (*See* Docs. 14, 17; *see also* Docs. 15-1 through 15-9).  Defendant did not appear at the hearing.  (Doc. 14).

## Discussion

## I.   Jurisdiction

The Court first notes that pursuant to 28 U.S.C. § 1331, it has federal question jurisdiction over Plaintiffs' FDCPA claims because they are federal claims.  15 U.S.C. § 1692k(d).  Likewise, the Court has supplemental jurisdiction over Plaintiff's state law GFBPA and tort claims because they rely on the same facts as Plaintiff's federal claims.  28 U.S.C. § 1367(a).  The undersigned further determines

that the Court has personal jurisdiction over Defendant based on the allegations in the Complaint. *See Stewart v. Regent Asset Mgmt. Solutions*, Civil Action File No. 1:10-CV-2552-CC-JFK, 2011 U.S. Dist. LEXIS 50046, at *5 (N.D. Ga. May 4, 2011) ("The presence of the Court's jurisdiction must appear on the face of the complaint."), *adopted by* 2011 U.S. Dist. LEXIS 58600 (N.D. Ga. May 31, 2011).

## II.   <u>Liability</u>

Plaintiffs ask this Court to enter a default judgment on three Counts contained in the Complaint. (*See* Doc. 12-1 at 4-24). Specifically, the Complaint alleges that Defendant engaged in debt collection practices prohibited by the FDCPA and GFBPA (Doc. 1 ¶¶ 104-118) and committed the torts of abusive collection, "tortious infliction of emotional distress," slander of title, and invasion of privacy (*id.* ¶ 120).

Before granting default judgment, the Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire and Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (unpublished decision). "While 'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact.' " *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

6

## A. **FDCPA Claims**

Plaintiffs allege that Defendant's filing of a lien and collection lawsuit against Plaintiffs, its communication with Mr. Cross with knowledge he was represented by counsel, and its direction that the HOA restrict Plaintiffs' access to neighborhood amenities constituted violations of multiple FDCPA provisions including 15 U.S.C. §§ 1692c(a)(2), 1692d, 1692d(6), 1692e, 1692e(2)(A), 1692e(5), 1692e(11), 1692f, and 1692f(1). (*See* Doc. 1 at ¶¶ 104-116). The facts set out in Plaintiffs' Complaint state valid claims under these provisions.

"In enacting the FDCPA, Congress sought 'to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692(e)). "Accordingly, the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as the use of 'unfair or unconscionable' means of collection." *Id.* (quoting 15 U.S.C. §§ 1692(e) and 1692f). "To prevail on an FDCPA claim, [the] plaintiff[s] must establish that:

(1) [they have] been the subject of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged

in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2010) (quoting *Buckley v. Bayrock Mortg. Corp.*, No. 1:09-cv-1387-TWT, 2010 U.S. Dist. LEXIS 10636, at *21 (N.D. Ga. Feb. 5, 2010)), *adopted by* 767 F. Supp. 2d 1354, 1359 (N.D. Ga. 2011).

Plaintiffs have satisfactorily alleged that they have been "the subject of collection activity arising from a consumer debt" and that Defendant is a debt collector under the Act. (Doc. 1 ¶¶ 20-28, 31). Further, Plaintiffs sufficiently allege that Defendant engaged in prohibited conduct under the statute. For one, "[m]aintaining an invalid lien against a debtor's home falls comfortably within the kinds of practices Congress has identified as unfair under § 1692f[.]" *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014); *see also* 15 U.S.C. § 1692f(6)(A) (prohibiting the taking or threat of taking "any nonjudicial action to effect dispossession or disablement of property if [] there is no present right to possession of the property"). Plaintiffs' allegation that Defendant engaged in abusive, scattershot litigation tactics by filing a lawsuit it never intended to fully prosecute states a claim under §§ 1692e and 1692f. *See Mason v. Midland Funding LLC*, 2017 U.S. Dist. LEXIS 216825, at *94 (N.D. Ga. July 27, 2017) (allegations that debt collector "filed lawsuits when they should have known that they could never prove their claims in court" were sufficient to state FDCPA claim); *see also*

8

*Kuria v. Palisades Acquisition XVI, LLC*, 752 Supp. 2d 1293, 1302-03 (N.D. Ga. 2010) (plaintiff stated a claim under §§ 1692e and 1692f where his complaint alleged "a pattern and practice of abusive, scattershot litigation to collect debts").

Furthermore, Plaintiffs' assertion that Defendant's employee called Mr. Cross directly in an effort to settle the debt despite knowledge that he was represented by counsel constitutes a clear violation of the statute, which provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney[.]" 15 U.S.C. § 1692c(a)(2). Finally, Plaintiffs assert that Defendant directed the HOA to prevent Plaintiffs' access to the neighborhood amenities for which they paid annual assessments "[i]n another attempt to coerce Plaintiffs into paying amounts not due and owing[.]" (Doc. 12-1 at 12; *see also* Doc. 1 ¶¶ 37, 114). The method of directing an HOA to restrict alleged debtors from neighborhood amenities to get them to pay a debt that has already been settled falls well within the type of "unfair or unconscionable collection methods" prohibited by the FDCPA. *Ohuche v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 182871, at *30 (N.D. Ga. Feb. 25, 2013) (quoting *Gass v. CitiMortgage, Inc.*, 1:11-CV-3713-RWS-JSA, 2012 U.S. Dist. LEXIS 114457, at *43 (N.D. Ga. June 25, 2012)). Plaintiffs have therefore satisfactorily alleged several violations of the FDCPA.

**B. GFBPA Claims**

9

Plaintiffs' Complaint also alleges that

> [Defendant]'s actions, including without limitation, each of the specific enumerated FDCPA violations referenced above as well as the general use of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce, constitute violations of Georgia's Fair Business Practices Act.

(Doc. 1 ¶ 117). This allegation also supports a valid claim. The GFBPA provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.C.G.A. § 10-1-393(a). Under Georgia law, allegations of unfair or deceptive debt collection conduct sufficient to trigger the FDCPA also plausibly demonstrate violations of the GFBPA. *See 1st Nationwide Collection Agency, Inc. v. Werner*, 654 S.E.2d 428, 431 (Ga. Ct. App. 2007); *see also Gilmore v. Account Mgmt.*, 357 Fed. Appx. 218, 220 (11th Cir. 2009) (unpublished decision) (reversing district court's denial of motion for default judgment on the plaintiff's FBPA claim where the defendant "necessarily violated Georgia's FBPA when it violated the FDCPA").

As discussed at greater length above, Plaintiffs have sufficiently alleged conduct violative of the FDCPA. As Plaintiffs accurately point out, "violations of the FDC[P]A are within the scope of the GFBPA[.]" *Carlisle v. Nat'l Commer. Servs.*, 722 Fed. Appx. 864, 869 (11th Cir. 2018) (unpublished decision); *see also Gilmore*, 357 Fed. Appx. at 221. As such, Plaintiffs' allegations that Defendant filed a frivolous collection lawsuit, cut off access to neighborhood amenities, and

continued contacting Mr. Cross despite knowledge he had retained counsel—all with the intent to coerce Plaintiffs into paying—constitute intentional violations of the GFBPA. *See Beringer v. Hearshe, LLC*, Civil Action File No. 1:10-cv-1399-WSD-ECS, 2011 U.S. Dist. LEXIS 160960, at *12 (N.D. Ga. Aug. 31, 2011) (debt collection phone calls made to the plaintiff were intentional because they "were designed to intimidate Plaintiff into responding"); *Gilmore*, 357 Fed. Appx. at 219 n. 1 (plaintiff entitled to default judgment on his GFBPA claims where he alleged that the defendant failed to identify itself properly, misrepresented the amount and character of his debt to him and credit reporting agencies, and threatened him with unlawful litigation).

## C. **Slander Of Title Claim**

Plaintiffs allege that Defendant "malicious[ly] attempt[ed] to impugn Plaintiffs' title to the property in order to coerce Plaintiffs into paying amounts not owed by them." (Doc. 12-1 at 16). "The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." O.C.G.A. § 51-9-11. The elements of a slander of title claim are:

> (1) publication of slanderous or libelous words; (2) that they were malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled.

*Lee v. Washington Square Homeowners' Ass'n, Inc.*, 273 Ga. App. 392, 615 S.E.2d 210, 213 (Ga. App. 2005) (internal quotation omitted).  Additionally, under Georgia law, title can be slandered through encumbering property by recording a lien.  *Boaz v. Latson*, 580 S.E.2d 572, 579 (Ga. Ct. App. 2003) (noting that "case law reveals that title can be slandered through activities such as . . . filing notice of a materialman's lien") (citing *F.S. Assoc. v. McMichael's Constr. Co.*, 399 S.E.2d 479, 482 (Ga. Ct. App. 1990) ("[T]he filing of a notice of lien against property . . . in an amount exceeding that which the owner agreed to be liable, may be actionable.").

Regarding the first and second elements, as discussed above, the Complaint alleges that Defendant maliciously recorded the above-referenced lien based on a false amount.  (Doc. 1 ¶¶ 52-53; Doc. 12-1 at 16).  The Complaint also alleges that Plaintiffs sustained special damages when they were denied favorable loan terms on a home equity loan product after the lender discovered the lien on their property.  (Doc. 1 ¶¶ 55-59).  Finally, the Complaint alleges that Plaintiffs held title and possession to their home at the time the lien was recorded.  (*Id.* ¶ 54).  Thus, Plaintiffs have alleged a valid slander of title claim against Defendant.

## D. Abusive Collection Claim

Plaintiffs allege a claim for "Georgia's recognized common law tort of abusive collection."  (Doc. 12-1 at 28; *see also* Doc. 1 ¶ 120).  Under Georgia law, "unreasonable bill-collection procedures, e.g., making false statements, threats, and

harassing telephone calls, do constitute an actionable tortious wrong." *Dolanson Co. v. Citizens & Southern Nat'l Bank*, 251 S.E.2d 274, 277-78 (Ga. 1978); *see also Kinzy v. Wells Fargo Bank, N.A.*, Civil Action No. 1:13-CV-357-CAP, 2013 U.S. Dist. LEXIS 201071, at *9 (N.D. Ga. Nov. 4, 2013) (recognizing the tort of "abusive collection" as the same tort found actionable in *Dolanson* based on the plaintiff's allegations of "numerous harassing phone calls in an unreasonable attempt to collect a bill that he had already paid") (citing *Dolanson*, 251 S.E.2d at 278).  As referenced above, Plaintiffs allege that Defendant demanded amounts they had already paid, maliciously filed a lien on their property for the inaccurate debt, filed a collection lawsuit based on the inaccurate debt without meaningful involvement of counsel and with the intention to coerce Plaintiffs to pay, called Mr. Cross repeatedly despite knowing he was represented in the collection lawsuit, and directed Plaintiffs' HOA to remove their access to neighborhood facilities.  (Doc. 1 ¶¶ 65, 71-81, 83-99).  This conduct undoubtedly constitutes unreasonable debt collection methods supportive of a claim for "abusive collection," or "harassment," under Georgia law.  *See Kinzy*, 2013 U.S. Dist. LEXIS 201071, at *9 (plaintiff stated a claim for "abusive collection" where he alleged the defendant "made numerous harassing phone calls in an unreasonable attempt to collect a bill that he had already paid"); *Blazer Fin. Svcs., Inc. v. Stewart*, 233 S.E.2d 1, 2 (Ga. Ct. App. 1977) (affirming trial court's

finding that unreasonable threats associated with an invalid debt caused damages for mental suffering).

### E. Tortious Infliction Of Emotional Distress Claim

Plaintiffs allege a state law claim for "tortious infliction of emotional distress[.]" (Doc. 1 ¶ 120). Under Georgia law, a claim for negligent infliction of emotional distress requires "some impact on the plaintiff, and that impact must be a physical injury." *Ryckeley v. Callaway*, 412 S.E.2d 826 (1992) (citing *OB-GYN Assoc. v. Littleton*, 386 S.E.2d 146, 148 (1989)). Plaintiffs have not alleged that Defendant physically injured them, so the undersigned addresses whether their allegations state a claim for intentional infliction of emotional distress. To prevail on an intentional infliction of emotional distress ("IIED") claim, Plaintiffs must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *See Hendrix v. Phillips*, 428 S.E.2d 91, 92 (Ga. Ct. App. 1993). Georgia courts have found liability for IIED "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Sys., Inc.*, 419 S.E.2d 507, 509 (Ga. Ct. App. 1992). "The burden on a plaintiff asserting

a claim for [IIED] is heavy." *Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000).

Here, Plaintiffs allege that "[t]he individual and combined acts of [Defendant] and its agents constitute . . . tortious infliction of emotional distress[.]"  (Doc. 1 ¶ 120).  While Plaintiffs' motion for default judgment contains a discussion on most of the causes of action in their Complaint, it does not assert why they are entitled to default judgment on their "tortious infliction of emotional distress" claim, though it does outline damages for "mental and emotional anguish."  (*See* Doc. 12-1 at 29).

The Court finds that Plaintiffs have not demonstrated that their allegations are sufficient to establish an IIED claim.  To the extent Plaintiffs' IIED claim is based on the acts constituting violations of the FDCPA and slander of title referenced above, that conduct does not provide a valid basis for an IIED claim.  Defendant's coercive communications with Plaintiff, its groundless legal actions, and its direction to restrict Plaintiffs' use of neighborhood amenities—all on the basis of debt already satisfied—was no doubt troubling to Plaintiffs and caused them distress.  However, Defendant's alleged conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Farrell v. Time Service, Inc.*, 178 F. Supp. 2d 1295, 1299 (N.D. Ga. 2001) (quoting *Biven Software, Inc. v. Newman*, 473 S.E.2d 527, 529 (Ga. Ct. App. 1996)); *see also Latimore v. Gateway*

*Retrieval, LLC*, Civil Action File No. 1:12-CV-00286-TWT-JFK, 2013 U.S. Dist. LEXIS 29512, at *34-35 (N.D. Ga. Feb. 1, 2013), *adopted by* 2013 U.S. Dist. LEXIS 29527 (N.D. Ga. Mar. 4, 2013) (denying IIED claim on default judgment where the plaintiff alleged that debt collector's employees threatened her with arrest and prosecution causing "extreme emotional distress, shock, alarm and fear"); *Cook v. Covington Credit of Georgia, Inc.*, 660 S.E.2d 855, 858 (2008) (finding that threats from debt collectors involving "numerous demands over the telephone[,]" a personal confrontation, and the use of a racial epithet did not support an IIED claim).

Accordingly, the Court finds that the allegations in Plaintiffs' Complaint do not provide the requisite factual basis for an IIED claim for purposes of their motion.

**F. Invasion Of Privacy Claim**

Plaintiffs include invasion of privacy in their list of state law causes of action. (*See* Doc. 1 ¶ 120). "Georgia law recognizes a claim for invasion of privacy based on 'publicity that puts one in a false light.' " *Pryce v. Deutsche Bank Nat'l Trust Co.*, Civil Action File No. 1:13-CV-03945-HLM, 2014 U.S. Dist. LEXIS 189257, at *33 (N.D. Ga. Jan. 31, 2014) (quoting *Benedict v. State Farm Bank, FSB*, 709 S.E.2d 314, 317 n. 3 (Ga Ct. App. 2011)). Plaintiffs do not point to specific factual conduct supporting their invasion of privacy claim. To the extent Plaintiffs meant to allege that claim on the basis of their lender's discovery of Defendant's previously-recorded lien, (*see id.* ¶ 56), that conduct does not support a claim

because the lien conveyed that they owed a debt, which they did not. (*Id.* ¶ 51). The "publication" of the lien was therefore false. By contrast, statements supportive of an invasion of privacy claim "are true, but involve private matters." *Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga Ct. App. 2008). Further, regardless of its falsity, Plaintiffs did not have a reasonable right to expect that the lien would remain private because it was a matter of public record. *See Williams v. Coffee Cty. Bank*, 308 S.E.2d 430, 431 (Ga. Ct. App. 1983) (finding no cause of action for invasion of privacy based on disclosure of matter of public record). Thus, Plaintiffs have failed to demonstrate a valid basis for an invasion of privacy claim under Georgia law

## III.   <u>Damages And Attorney's Fees</u>

Having determined that a default judgment is warranted on Plaintiffs' FDCPA, GFBPA, slander of title, and abusive collection claims, the court "will determine the amount and character of the recovery that should be awarded." *Patray v. Northwest Publ.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) (additional citation omitted). Plaintiffs request statutory damages for Defendant's FDCPA violations, actual damages, treble damages, punitive damages, attorney's fees and costs. (Doc. 12-1 at 23-24).

### A. <u>Statutory Damages</u>

Plaintiffs request statutory damages of $2,000.00 for violations of the FDCPA as to both Mr. and Mrs. Cross. (*Id.* at 23). Under the FDCPA, the Court may award

statutory damages of up to $1,000.00.  15 U.S.C. § 1692k(a)(2)(A).  As referenced in the above discussion, Plaintiffs' allegations support a valid claim that Defendant repeatedly violated multiple provisions of the FDCPA as to both Plaintiffs. Furthermore, Defendant's employee continued calling despite Mr. Corss having informed her that he had retained counsel, which renders Defendant's FDCPA violation intentional.   In another case involving intentional FDCPA violations related to repeated collection calls and coercion, a statutory award of $1,000.00 for one plaintiff was found appropriate.  *Latimore*, 2013 U.S. Dist. LEXIS 29512, at *34-35; *see also Stewart v. Regent Asset Mgmt. Solutions*, Civil Action File No. 1:10-CV-2552-CC-JFK, 2011 U.S. Dist. LEXIS 50046, at *15 (N.D. Ga. May 4, 2011) (awarding $1,000 of statutory damages for multiple violations of the FDCPA on motion for default judgment), *adopted by* 2011 U.S. Dist. LEXIS 58600 (N.D. Ga. May 31, 2011).  Accordingly, the Court **RECOMMENDS** that Plaintiffs be awarded statutory damages in the amount of $1,000.00 per Plaintiff, for a total of $2,000.00.

### B. Actual Damages

Plaintiffs also allege actual damages stemming from the lost opportunity to qualify for a home equity loan, the expense incurred by defending Defendant's collection lawsuit, the loss of the use of neighborhood amenities for which they paid, and mental distress.  (Doc. 12-1 at 29).

## 1. **Loan Denial**

As referenced above, Plaintiffs were denied a 20-year home mortgage loan in the amount of $40,000 at a rate of 4.432% annual percentage rate ("APR") after the lender reviewed the lien Defendant recorded on their property.  (Doc. 1 ¶¶ 55-58; *see also* Doc. 12-1 at 24).  Plaintiffs sought to use the $40,000 to pay off the same amount in credit card debt, which carried an APR of 12.99%.  (Doc. 12-1 at 7; Doc. 16 at 3).  The lien was released in March 2017.[1]  (Doc. 16 at 4).  Mr. Cross testified that he could have obtained a loan with the same terms as soon as April 2017 had he discovered the lien was released.  (Hearing Tr. at 15:8-13; *see also* Doc. 16 at 4).  Plaintiffs seek $3,628.16 as the difference in monthly payments over a 16-month period between the 4.432% rate they could have obtained in April 2017 and the 12.99% rate they actually paid on the same amount during the period.  (Doc. 16 at 5).  Plaintiffs are entitled to damages stemming from Defendant's slander of title claim and its violations of the GFBPA and FDCPA.  *See Veatch v. Aurora Loan Servs., LLC*, 771 S.E.2d 241, 244 (Ga. Ct. App. 2015) (special damages recoverable for slander of title claim); *1st Nationwide Collection Agency, Inc.*, 645 S.E.2d at 431-32 (affirming trial court's treble damages award under the GFBPA for failing to communicate debt as disputed in the plaintiff's credit reports); O.C.G.A. §

[1] Plaintiffs' counsel discovered this release shortly before the default judgment hearing.  (Tr. 18:8-18).

1692k(a)(1) (permitting recovery of actual damages sustained by individuals harmed by a debt collector's violations); *Randolph v. Northeast Legal Grp., LLC*, Case No. 2:12-cv-03800-HGD, 2014 U.S. Dist. LEXIS 82199, at *19-20 (N.D. Ala. May 23, 2014) (plaintiff entitled to difference between amount of monthly payments she actually made and amount she would have made at a more favorable interest rate but for a credit denial based on false credit information), *modified on other grounds by* 2014 U.S. Dist. LEXIS 81414 (N.D. Ala. June 16, 2014) (accepting magistrate's finding as to actual damages caused by credit denial); *Royster v. Pacific Creditors Ass'n*, Case No. 3:08CV009, 2008 U.S. Dist. LEXIS 116434, at *9-10 (S.D. Ohio Oct. 23, 2008) (awarding $60,500.00 in excess interest payments on a 30-year mortgage caused by debt collector's failure to remove derogatory credit information).

Accordingly, the undersigned **RECOMMENDS** that Plaintiffs be entitled to $3,628.16 in actual damages stemming from the cloud placed on their title by Defendant's slander of title and violations of the FDCPA and GFBPA.

## 2. <u>Denial Of Access To Amenities And Defense Of Collections Lawsuit</u>

Plaintiffs also allege they were damaged in the amount of $1,848.00 by Defendant's direction to their HOA that they be restricted from neighborhood amenities. (Doc. 12-1 at 18). According to the Complaint, Plaintiffs paid for these amenities but were improperly denied their use for four years by the HOA acting at

20

Defendant's direction.  (*Id.*; *see also* Doc. 1 ¶ 63; Doc. 12-4 ¶ 61; Doc. 12-5 ¶ 51).

Additionally, Plaintiffs maintain they expended a flat fee of $600.00 in attorney's

fees for defending the collections lawsuit Defendant filed against them in state court.

(Doc. 12-1 at 18).  Plaintiffs have submitted declarations made by Mr. Cross and his

counsel in the underlying action confirming that amount.  (Doc. 12-4 ¶ 29; Doc. 12-

6 ¶ 30-31, 40).   Having reviewed the allegations and evidence of damages, the

undersigned **RECOMMENDS** that Plaintiffs be permitted recovery of actual

damages in the amount of $1,848.00 for their loss of access to neighborhood

amenities and $600.00 in attorney's fees for defending the state court collection

lawsuit.  *See Rivers v. America's Network, Inc.*, Civil Action no. 1:10-cv-02606-

HTW-RGV, 2011 U.S. Dist. LEXIS 156650, at *16 (N.D. Ga. Apr. 14, 2011)

(plaintiffs who bring successful FDCPA claims are entitled to actual damages),

*adopted by* 2011 U.S. Dist. LEXIS 156651 (N.D. Ga. July 29, 2011).

### 3. Mental And Emotional Distress

Plaintiffs are entitled to recover general damages for their "mental and

emotional anguish" resulting from Defendant's violations of the FDCPA, the

GFBPA, and Defendant's tortious conduct.  (Doc. 12-1 at 28-29; Doc. 1 ¶¶ 116, 118,

121).  "Actual damages under the FDCPA include damages for emotional distress."

*Minnifield v. Johnson & Freedman, LLC*, 448 Fed. Appx. 914, 916 (11th Cir. 2011)

(unpublished decision).  Similarly, "the GFBPA allows for an award of actual

damages." *Shurley v. McNeil & Meyers Asset Mgmt. Grp. LLC*, Civil Action No.

5:17-CV-792 (MTT), 2018 U.S. Dist. LEXIS 143900, at *7 (M.D. Ga. Aug. 24,

2018); *see also Carlisle*, 2017 U.S. Dist. LEXIS 39954, at *34-35 ("[G]eneral

damages are those which the law presumes to flow from any tortious act.").

Plaintiffs seek "general damages in an amount of at least $50,000.00 due to the

emotional distress, including anxiety, worry, stress, frustration, humiliation, loss of

sleep, and loss of enjoyment and social opportunity." (Doc. 16 at 7).

At the hearing, Mr. Cross testified about the time he spent attempting to clear

up his mistaken HOA assessment with Defendant. (Hearing Tr. at 9:11-10:3).

Specifically, Mr. Cross testified to sending "over a dozen" letters and emails to

Defendant. (*Id.* at 9:14-17). He also testified about the embarrassment caused by

Defendant's direction to restrict his family's access to neighborhood amenities. (*Id.*

at 12:3-20). Mrs. Cross also testified, stating that Defendant's actions caused Mr.

Cross to be frustrated and upset every time Defendant communicated with Plaintiffs.

(*Id.* at 21:18-23). Mrs. Cross stated that she felt worried about Mr. Cross when he

became "so agitated and aggravated about this." (*Id.* at 22:4-5). Mrs. Cross

expressed that she felt embarrassed when a sheriff's deputy came to Plaintiffs' house

to deliver service of the collection lawsuit initiated by Defendant. (*Id.* at 22:15-23).

She also testified that Defendant's actions caused her to lose sleep, caused her

stomach to hurt, and caused her and Mr. Cross to have "fights and arguments[.]"  (*Id.* at 24:2-18).

In light of Plaintiffs' well-pleaded allegations and their testimony at the hearing about the severity of their emotional distress, embarrassment, sleeplessness, and frustration due to Defendant's conduct, the undersigned determines that general damages for emotional distress are appropriate.  *See McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) ("[C]ourts have relied on a plaintiff's lay testimony in establishing emotional damages.").  However, the Court finds Plaintiffs' request of at least $50,000 to be excessive.  Instead, $30,000 for Defendant's GFBPA[2] violations appear to be appropriate amounts of recovery for the harm caused to Mr. and Mrs. Cross considering the spectrum of general damages awards other courts have found when faced with similar evidence of harm.  *See, e.g.*, *Shurley*, 2018 U.S. Dist. LEXIS 143900, at *8 (awarding actual damages of $10,000 under the GFBPA due to the emotional distress the plaintiff experienced resulting from threatening debt collection efforts); *Carlisle*, 722 Fed. Appx. at 869 (affirming default judgment award of $7,000 for emotional distress based on violations of the

---

[2] Plaintiffs' emotional distress is not traceable to a single claim.  As a result, the Court will not award general damages for conduct violative of other statutes or claims lest Plaintiffs be improperly afforded a duplicative recovery.  *See Carlisle*, 772 Fed. Appx. at 867 (affirming magistrate judge's decision to award no damages for FCRA where they would be duplicative of the plaintiff's other statutory damages).

FDCPA, the GFBPA, and the FCRA); *Gibson v. Rosenthal, Stein, & Assocs., LLC*, Civil Action No. 1:12-cv-2990-WSD, 2014 U.S. Dist. LEXIS 82093, at *6 (N.D. Ga. June 17, 2014) (adopting magistrate's default judgment award of $15,000 in actual damages for threatening debt collection calls that violated FDCPA); *Latimore*, 2013 U.S. Dist. LEXIS 29512, at *33 (awarding $10,000 in actual damages to Plaintiff as a result of Defendant's FDCPA violations, which included several threatening communications); *Beringer*, 2011 U.S. Dist. LEXIS 160960, at *12 (awarding $7,500.00 for actual damages under the GFBPA due to "excessive stress, worry, and loss of sleep" incurred as a result of frequent and misleading collection phone calls).

It is therefore **RECOMMENDED** that Plaintiffs be awarded $30,000.00 in general damages for emotional distress arising from Defendant's violations of the GFBPA.

### C. Treble Damages Under O.C.G.A. § 10-1-399

Plaintiffs also seek a treble recovery of their actual damages. (Doc. 12-1 at 24). "Treble damages are dependent on injury or damage resulting from a violation of the GFBPA." *Carlisle*, 2017 U.S. Dist. LEXIS 39954, at *40; O.C.G.A. § 10-1-399(c) ("[A] court shall award three times actual damages for an intentional violation."). However, Plaintiffs may not treble statutory damages awarded under the FDCPA. *See id.*, 2017 at *41 (awarding treble damages only as to Defendant's

24

GFBPA violations).   As described above, Defendant's GFBPA violations led to actual damages of $3,628.16 in the difference in payments under a less favorable interest rate, $600.00 in attorney's fees defending Defendant's collections lawsuit, $1,848.00 for directing Plaintiffs to cut off their access to amenities, and $30,000.00 in general damages for mental distress.  This amount results in a total recovery under the GFBPA of $36,076.16.  Therefore, it is **RECOMMENDED** that Plaintiffs be entitled to $108,228.48 in trebled damages.

### D. <u>Punitive Damages</u>

Plaintiffs seek punitive damages.  (Doc. 12-1 at 24; Doc. 16 at 9).  Punitive damages in excess of the amount awarded for statutory damages are not recoverable under the FDCPA.  *Thomas v. Pierce, Hamilton, and Stern, Inc.*, 967 F. Supp. 507, 512 (N.D. Ga. 1997) (finding that "punitive damages in excess of $1,000.00 are not recoverable under the [FDCPA]").  However, Georgia law permits the recovery of punitive damages for slander of title claims, *see Mtw Inv. Co. v. Alcovy Props.* 491 S.E.2d 460, 465 n. 4 (Ga. Ct. App. 1997), abusive collection claims, *see Blazer Fin. Servs., Inc.*, 233 S.E.2d at 2, and intentional violations of the GFBPA, *see* O.C.G.A. § 10-1-399(a).  Having determined that Defendant's conduct was intentional, the Court **RECOMMENDS** that Plaintiffs be entitled to a recovery of $25,000 for their GFBPA claims, their slander of title claim, and their abusive collection claim.

### E. <u>Attorney's Fees And Costs</u>

Finally, Plaintiffs seek attorney's fees and costs. (Doc. 12-1 at 24). Both the FDCPA and the GFBPA entitle successful plaintiffs to attorney's fees and costs. *See* 15 U.S.C. § 1692k(a)(3) (entitling a plaintiff bringing a "successful action" to "the costs of the action, together with a reasonable attorney's fee as determined by the court"); O.C.G.A. § 10-1-399(d) ( "[T]he person injured by such violation shall, in addition to other relief . . . be awarded reasonable attorneys' fees and expenses of litigation incurred in connection with said action[.]").

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "This amount is referred to as the 'lodestar.' " *Latimore*, 2013 U.S. Dist. LEXIS 29512, at 36 (citing *Loranger*, 10 F.3d at 781). Plaintiffs' request for attorney's fees is supported by the declarations of Plaintiffs' counsel Kris Skaar, James Feagle, and Cliff Dorsen, as well as James Hurt, Jr., who is not otherwise involved in this litigation. (*See* Docs. 12-6; 12-7; 12-8; 12-9). Plaintiffs also attach a billing invoice reflecting the hours expended and fees charged by the three attorneys. (Doc. 12-2). Specifically, Plaintiffs seek attorney's fees in the amount of $11,426.00 for 9 hours billed by Mr. Skaar at $570.00 per hour, 1.7 hours billed by Mr. Feagle at $535.00 per hour, and 17.1 hours billed by Mr. Dorsen at $315.00 per hour. (*See* Doc. 12-2; Doc. 16 at 8). Plaintiffs

also seek $1,047.87 in costs of the litigation for service of process, investigation costs, and the filing fee. (Doc. 12-1 at 38; Doc. 12-2 at 2).

Mr. Skaar is a 1986 graduate of the University of Georgia School of Law who has been practicing over thirty years, appearing before this Court in over 900 cases. (Doc. 12-6 ¶¶ 14, 15, 22). Mr. Feagle is a 1991 graduate of the Georgia State University College of Law with 25 years' experience in consumer rights' litigation. (Doc. 12-7 ¶¶ 7, 11). Mr. Dorsen is a 2015 graduate of the John Marshall Law School and has been practicing consumer rights law for three years. (Doc. 12-8 ¶¶ 7, 9). Each attorney has reviewed the billing record attached to Plaintiffs' motion and finds it to be accurate and reasonable. (Doc. 12-6 ¶¶ 58-60; Doc. 12-7 ¶ 21; Doc. 12-8 ¶¶ 7, 9). Mr. Hurt is a 2003 graduate of the University of Georgia School of Law, adjunct professor at the Georgia State University College of Law, and frequent lecturer at the National Consumer Rights Litigation Conference. (Doc. 12-9 ¶¶ 7, 9, 10). Mr. Hurt has represented clients bringing claims under the FDCPA, GFBPA, and other consumer protection statutes. (*Id.* ¶ 12). Having reviewed the attaching billing record, Mr. Hurt states that in his opinion, the hours expended and amount of fees charged by Plaintiffs' counsel were reasonable and necessary. (*Id.* ¶¶ 23, 26-28). Plaintiffs have additionally attached a copy of the U.S. Attorney's Fees Matrix, also known as the Laffey Matrix, which denotes reasonable fee rates of $602.00 for attorneys with more than 30 years' experience, $563.00 for attorneys

27

with 21-30 years' experience, and $334.00 for attorneys with 2-3 years' experience. (Doc. 12-3 at 1).

The Court finds that Plaintiffs' determination of lodestar fees for each attorney is well-supported by the evidence.  It is therefore **RECOMMENDED** that Plaintiffs be entitled to reasonable attorney's fees of $11,426.00 and $1,047.87 in costs.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' Motion For Default Judgment (Doc. 12) be **GRANTED in part and DENIED in part**. Specifically, it is **RECOMMENDED** that Plaintiffs' motion be **GRANTED** as to their claims under the FDCPA, the GFBPA, and their state law claims of slander of title and abusive collection.  It is **RECOMMENDED** that Plaintiffs' motion be **DENIED** with respect to their state law claims of invasion of privacy and tortious infliction of emotional distress.

It is further **RECOMMENDED** that Plaintiffs be awarded:  $2,000.00 in statutory damages under the FDCPA; $36,076.16 in actual damages trebled to $108,228.48 under O.C.G.A. § 10-1-399(c); $25,000.00 in punitive damages; $11,426.00 in reasonable attorney's fees; and $1,047.87 in litigation costs, for a total recovery of $147,702.35.

The Clerk is directed to terminate the reference of this case to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this <u>19th</u> day of <u>November</u>, 2018.

<div style="margin-left: 40%;">

<u>/s/ J. Clay Fuller</u>
J. Clay Fuller
United States Magistrate Judge

</div>