IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY CROSS and PAMELA CROSS   :
  :
     Plaintiffs,   :
  :
v.   :     CIVIL ACTION NO.
  :     1:17-CV-03804-AT-JCF
  :
EQUITYEXPERTS.ORG, LLC   :
  :
     Defendant.   :

## REPORT AND RECOMMENDATION

This case comes before the Court on Defendant Equityexperts.org, LLC's ("Defendant") Motion To Set Aside Clerk's Entry Of Default (Doc. 22). Because good cause does not support Defendant's motion, it is **RECOMMENDED** that Defendant's motion be **DENIED.**

## Background

Defendant is a limited liability company incorporated in Michigan. (Doc. 22 at 2). From March 29, 2017 to September 20, 2018, Defendant's registered address for service was 2000 Town Center, Suite 1900, Southfield, Michigan 48075. (*Id.*). Plaintiffs Jeffrey and Pamela Cross ("Plaintiffs") filed this action on September 28, 2017 alleging claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and claims under Georgia law. (*See generally* Doc. 1).

1

In October 2017, Plaintiffs attempted to serve Defendant by delivering a copy of the Complaint and summons to the Sheriff's Civil Division of Oakland County, Michigan for service on Defendant's registered agent, Michael Novak ("Novak").[1] (Doc. 3 at 2).  In a motion to extend the time for service, Plaintiffs maintained that the Sheriff's Office "returned the documents to Plaintiff's counsel unserved, noting 'No one in the office.  It is a virtual office.' " (*Id.*; *see also* Doc. 4-1 at 1-2).  The Court granted Plaintiffs' motion, and the time for service was extended to March 28, 2018.

On March 29, 2018, Plaintiffs filed two returns of service.  (*See* Doc. 7).  The first return of service reflects that on March 28, 2018, Plaintiffs' process server served Danielle Williams at 2000 Town Center, Ste. 1900, Southfield, Michigan. (*Id.* at 1).  The second return of service shows Candice "Jones/Alexis Smith" was served at 2391 Pontiac Road, Auburn Hills, Michigan, 48326 on the same day.  (*Id.* at 2).

After Plaintiffs requested an entry of default, the Clerk entered default against Defendant on May 8, 2018.  Plaintiffs then filed a motion for default judgment. (Doc. 5).  After directing Defendant to respond to Plaintiffs' motion and providing notice to Defendant at the address listed for its registered agent, the undersigned

---

[1] Plaintiffs obtained the identity of Defendant's registered agent and address through the State of Michigan's Department of Licensing and Regulatory Affairs website. (Doc. 3 at 2).

2

conducted a default judgment hearing, during which Plaintiffs testified and presented evidence about the events giving rise to this lawsuit and their damages. (*See* Docs. 14, 15, 17).  Defendant did not appear at the hearing.  (Doc. 14).  On November 19, 2018, the undersigned issued a Report and Recommendation ("R&R"), which recommended that Plaintiffs' motion for default judgment be granted except with respect to certain state law claims.  (*See* Doc. 18).  Thereafter, Defendant filed objections to the R&R (Doc. 21), answered Plaintiffs' Complaint (Doc. 23), and moved to set aside the Clerk's entry of default on the basis that Defendant was never properly served (Doc. 22).

On January 11, 2019, United States District Judge Amy Totenberg entered an Order declining to adopt the R&R "in light of the fact that doing so would be premature given the pending motion to vacate the default."  (Doc. 27 at 2). Accordingly, Judge Totenberg referred the matter back to the undersigned for decision on Defendant's motion.  (*Id.*).  Defendant's motion to set aside the default having been fully briefed,[2] the undersigned turns to the merits.

## **Discussion**

## I.   **Legal Standard**

---

[2] Plaintiffs responded to Defendant's motion on December 19, 2018 (Doc. 25), and Defendant timely replied on January 2, 2019 (Doc. 26).  Plaintiffs then filed a motion for leave to file a sur-reply to Defendant's reply on January 16, 2019, which the Court granted.  (Docs. 28, 30).  Defendant responded to Plaintiffs' sur-reply on January 31, 2019.  (Doc. 28).

"If a defendant fails to file an answer within the time required by FED. R. CIV. P. 12(a)(1)(A), upon motion by the plaintiff, the clerk must enter default against the defendant pursuant to FED. R. CIV. P. 55(a)." *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008). However, the Court is permitted to set aside an entry of default for "good cause." FED. R. CIV. P. 55(c). Courts are instructed to consider the following factors when determining good cause: whether the default was culpable or willful; whether setting it aside would prejudice the non-defaulting party; and whether the party in default has a meritorious defense. *J&J Sports Prods., Inc. v. Crown Ventures Enters., Inc.*, No. 1:13-CV-1991-RWS, 2013 U.S. Dist. LEXIS 178671, at *3 (Dec. 20, 2013 N.D. Ga. 2013). "The defaulting defendant bears the burden of establishing good cause." *Carlisle v. Nat'l Commer. Servs.*, Civil Action No. 1:14-CV-515-TWT-LTW, 2015 U.S. Dist. LEXIS 88186, at *23 (N.D. Ga. June 12, 2015) (citing *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999)) (additional citations omitted), *adopted by* 2015 U.S. Dist. LEXIS 87600 (N.D. Ga. July 7, 2015). In the Eleventh Circuit, "there is a strong policy of determining cases on their merits[,]" and defaults are therefore viewed with disfavor. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). However, where "a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana Export-*

*Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951-52 (11th Cir. 1996) (citing *Shepard Claims Service, Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986)).

## II.    <u>Plaintiffs Effected Proper Service On Defendant</u>

Defendant contends that good cause supports setting aside the entry of default in this case because Plaintiffs failed to properly effect service of process.  (Doc. 22 at 5).  A finding of insufficient service of process requires a Court to vacate the entry of default.  *Varnes v. Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1371 (11th Cir. 1982).   "Defendant bears the burden of proving that service of process was insufficient."  *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1267 (S.D. Fla. 2013) (citation omitted).

Fed. R. Civ. P. ("Rule") 4(h) governs service on corporations.  That Rule "allows for service of a corporation in the manner prescribed by Rule 4(e)(1).  Rule 4(e)(1) permits a claimant to perfect service by 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located.' "  *Kennebrew v. Green Tree Servs. LLC*, Civil Action No. 1:14-CV-1346-RWS, 2014 U.S. Dist. LEXIS 140067, at *4 (N.D. Ga. Oct. 2, 2014). Defendant's brief in support of its motion neglects to address how service was deficient under Georgia law.  (Doc. 22 at 8 ("Plaintiffs failed to serve Equity Experts in accordance with federal or Michigan law and therefore the Court has not acquired

jurisdiction over Equity Experts.")).   Because this Court is located in Georgia, however, service pursuant to Georgia law is also proper.  *See* FED. R. CIV. P. 4(e)(1) ("[A]n individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.")

"In Georgia, a corporation is properly served by delivering a copy of both the summons and complaint to the president or other officer of such corporation, a managing agent thereof, or a registered agent thereof."  *Kennebrew*, 2014 U.S. Dist. LEXIS 140067, at *4 (quoting O.C.G.A. § 9-11-4(e)(1)(A)).  With respect to foreign corporations not authorized to transact business in Georgia, service is proper "by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process."  O.C.G.A. § 9-11-4(e)(7).  As briefly noted above, Plaintiffs filed two returns of service with the Court on March 29, 2018.  (*See* Doc. 2 at 1-2).  "A signed return of service constitutes prima facie evidence of valid service."  *Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *20 n. 3; citing *Insituform Techs.*, 588 F. Supp. 2d at 1353 (concluding, in the context of determining whether there was good cause for setting aside the entry of default, that "a signed return of service constitutes prima facie evidence of valid service" that "can be overcome only by strong and convincing evidence"); *accord Ogidi-Gbegbaje v. J.B. Hunt. Transp.*, Civil Action File No. 1:17-CV-00009-WSD-JFK,

2017 U.S. Dist. LEXIS 163799, at *3 (N.D. Ga. June 14, 2017), *adopted by* 2017 U.S. Dist. LEXIS 163361 (N.D. Ga. Oct. 2, 2017). "The defendant is apprised by the return of what he must contest." *Baughan v. Alaoui*, 524 S.E.2d 536, 538 (Ga. Ct. App. 1999) (citation omitted). "The Court may look to affidavits, depositions, and oral testimony to resolve disputed questions of fact." *Hollander v. Wolf*, Case No. 09-80587-CIV-RYSKAMP/VITUNAC, 2009 U.S. Dist. LEXIS 101446, at *8 (S.D. Fla. Oct. 9, 2009) (citation omitted).

Plaintiffs' first return of service indicates that private process server Jason Fantich ("Fantich") served Danielle Williams ("Williams") at a "virtual office" located at 2000 Town Center, Ste. 1900, Southfield, Michigan 48075 on March 28, 2018.  (Doc. 7 at 1).  The second return indicates that Fantich served "Candice Jones/Alexis Smith" at the address 2391 Pontiac Road, Auburn Hills, Michigan 48326.  (*Id.* at 2).  The parties agree that during the relevant time period, Novak was Defendant's registered agent, and Defendant's registered office was the 2000 Town Center address.  (Docs. 22 at 2; Doc. 25 at 7).  Defendant, however, contends that service was insufficient because "[t]he resident agent[3] is [] Novak and there is no Return of Service on file indicating that he was served."  (Doc. 22 at 6).  Defendant maintains that none of the individuals reflected on Plaintiffs' returns of service are

---

[3] Defendant utilizes the term "resident agents" in place of the term "registered agent" utilized by Georgia's Civil Practice Act.  *See* MCR 2.105(D)(1).

persons authorized to accept service on Defendant's behalf.  (*Id.* at 3, 7).  For support, Defendant attaches a six-paragraph declaration to its motion made by Jacqueline Galofaro ("Galofaro"), Defendant's vice president and general counsel. (Doc. 22-1 ("Galofaro Decl.")).  Galofaro states that the individuals identified by Plaintiffs' returns of service, i.e., Williams, Smith, and Jones, were not authorized to accept service of process on behalf of Defendant.  (*Id.* ¶¶ 5, 6).

In response to Defendant's motion, Plaintiffs argue that the individuals served were authorized to accept service on behalf of Defendant and Novak.  (Doc. 25 at 9).  Plaintiffs submit a declaration made by Fantich, a process server with 21 years of experience.  (Doc. 25-2 ("Fantich Decl.") ¶ 5).  Fantich's declaration states that on March 28, 2018, he attempted to serve process on Defendant at its business address, 2391 Pontiac Road, Auburn Hills, Michigan 48326.[4]  (*Id.* ¶ 10).  He further asserts that after his first unsuccessful attempt at service to any of Defendant's officers at that address, he served an employee who confirmed that she "was with Equity Experts."  (*Id.* ¶¶ 12-32).

Fantich averred that from there, he proceeded to 2000 Town Center, Suite 1900, Southfield, Michigan, which he found to be a "virtual office" operated by a company named Regus.  (*Id.* ¶¶ 40-42).  Fantich stated that "[i]n the course of many

---

[4] Defendant states that this address became its new registered address for service on September 20, 2018.  (Doc. 22 at 2).

years of serving process," he had "become familiar with Regus and other operators of 'virtual offices,' " which he stated serve "mainly as [a] point to receive communications in the form of mail, deliveries, and notices." (*Id.* ¶¶ 43, 45). Fantich asserted that the virtual office's employees "are there to make sure that communications received are passed on to a company, like Equity Experts, that uses the virtual office." (*Id.* ¶ 46). Fantich stated that when he arrived, he encountered Williams, "who was the person in charge of the registered office." (*Id.* ¶ 47). He further attested that after asking for Novak, "Ms. Williams said that Mr. Novak was not present, but that she was authorized to accept anything on his behalf." (*Id.* ¶ 52). According to this declaration, Fantich then handed Williams copies of the summons and Complaint, which he indicated were clearly visible as court papers. (*Id.* ¶¶ 53-54). Finally, Fantich testified that he "confirmed with Ms. Williams that she had authority to accept the court papers, and she replied with words to the effect that she does this 'all the time, every day.' " (*Id.* ¶ 55).

While it is undisputed that Novak, Defendant's registered agent, was not served personally, Georgia law allows service on a foreign corporation not authorized to do business[5] in the state "by delivering a copy of the summons and complaint to an agent authorized by appointment . . . to receive service of process."

---

[5] In its response to Plaintiff's sur-reply, Defendant avers that it is neither incorporated in Georgia nor authorized to transact business in Georgia. (Doc. 31 at 4-5).

O.C.G.A. § 9-11-4(e)(7).   "Service on a corporation has been found to be proper under Georgia law upon an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him."  *Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *21, n. 3 (citing *Scott v. Atlanta Dairies Cooperative*, 238 S.E.2d 340, 343 (Ga. 1977)).   "The Georgia cases do not create a high threshold for the amount of authority necessary to make an employee a valid agent to receive service of process."  *Henderson v. Cherry Bekaert & Holland*, 932 F.2d 1410, 1412 (11th Cir. 1991) (citations omitted).

In *Murray v. Sloan Paper Co.*, 442 S.E.2d 795, 797 (Ga. Ct. App. 1994), the Georgia Court of Appeals overturned the finding below that service on an administrative assistant was insufficient.  There, the plaintiff presented evidence that upon arriving at the registered agent's office, the marshal tasked with effecting service was told by a receptionist that the registered agent was unavailable.  *Id.* at 796.  The marshal averred that he was advised by an administrative assistant that the registered agent was unavailable, but that she could take the service paper for him. *Id.*   The administrative assistant signed the return of service form next to the designation, "in charge of the office."  *Id.*   The defendant also presented evidence in the form of an affidavit sworn to by the administrative assistant.  *Id.*   She stated that the marshal "never asked whether I was an officer of or agent for service of process on behalf of [the corporation]" and that she had never been an officer or registered

10

agent.  *Id.*  She further testified that the marshal gave her papers, which she later discovered were related to the lawsuit.  *Id.*  The defendant also provided evidence from the registered agent himself, who "averred that he was not personally served with the complaint."  *Id.*  The court found that while the administrative assistant was not the registered agent or a corporate officer, the defendant failed to present evidence that "that her actual duties did not entail managerial or supervisory responsibilities[.]"  *Id.* at 797.  The court determined that "her title, the representation she made, and the actions she took speak to the contrary.  The burden was on defendant to show that she did not have such responsibility. . . . The evidence was not met."  *Id.*

In *Northwestern Nat'l Ins. Co. v. Kennesaw Transp., Inc.*, 309 S.E.2d 917, 919 (Ga. Ct. App. 1983), the Georgia Court of Appeals upheld the trial court's denial of the defendant-corporation's motion to set aside default when it determined that the evidence below supported a finding of sufficient service made on an employee other than the corporation's registered agent.  There, the plaintiff had presented evidence in the form of testimony from sheriff's officers who served the papers.  *Id.* The officers testified that after arriving at the registered agent's office and asking for him, a clerk told them he was unavailable but that she would accept service.  *Id.*  The officers also averred that she "led [them] to believe she was authorized to accept service."  *Id.* (internal quotation marks omitted).  The officers stated that "they were

acquainted with the customary practice of the defendant to designate an employee to accept service on behalf of the designated agent[.]" *Id.* (internal quotation marks omitted). The evidence submitted by the defendant included an affidavit made by its registered agent, who stated that the secretary was not in charge of the office and "was not a proper person for service of process," and an affidavit sworn to by the secretary stating the same. *Id.* The Georgia Court of Appeals reasoned as follows:

> The evidence authorized the judge to find that [the clerk] was more than a 'mere employee,' as she was the person who spoke to the process servers and was aware that [the registered agent] was not available for service, further, the court could have found from the officers' affidavits that [the clerk] led the officers to believe she was in charge of the office and was authorized to accept service for Northwestern.

*Id.*

The facts underlying the cases referenced above are similar to the those present in this case. For one, the evidence indicates that, like the administrative assistant in *Murray*, who the court noted was the one who interacted with the marshal, Williams spoke with Fantich upon his arrival and asked him who he was there to see. (Fantich Decl. ¶¶ 47-48). The evidence also indicates that Williams led Fantich to believe she "was in charge of the registered office" just as the evidence showed in *Murray* and *Northwestern*. (Fantich Decl. ¶ 47). *See Northwestern*, 309 S.E.2d at 918 (return of service indicated mail clerk was "in charge of the office and place of doing business of said Corporation"); *Murray*, 442 S.E.2d at 797 (reasoning, "it could be found from the officer's affidavit that [the administrative assistant] led

the officer to believe she was in charge of the office") (internal quotations and alterations omitted).  Moreover, just like the mail clerk in *Northwestern* and the administrative assistant in *Murray*, Williams both notified Fantich of Novak's unavailability and represented that she was authorized to accept materials on his behalf.  (Fantich Decl. ¶ 52).  In fact, Fantich testified that upon confirming that Williams had the authority to accept service, she told him "she does this 'all the time, every day.' " (*Id.* ¶ 55).  In short, Plaintiffs' evidence demonstrates that service upon Williams was proper, as it indicates that Williams was an individual authorized to accept service on Novak's behalf under Georgia law.[6]

In weighing the dueling factual assertions of the parties' declarations, the undersigned finds that Galofaro's declarations do not rebut Fantich's declaration in support of proper service.  Defendant submits two declarations made by Galofaro—one attached to Defendant's initial motion, and a "supplemental" declaration attached to its reply.[7]  In her declarations, Galofaro asserts that Williams was not

---

[6] The undersigned notes that Plaintiffs contend "Candice Jones," identified later by Fantich as Alexis Smith, was also authorized to accept service for Defendant.  (Doc. 25 at 6-7; *see also* Doc. 7 at 2).  However, because the evidence indicates Williams was a proper party to receive service, the Court refrains from considering whether Alexis Smith was also a proper party for service.

[7] Defendant attaches a second, "supplemental" declaration to its reply brief.  (*See* Doc. 26-1).  "[A]s a general rule, affidavits must be filed and served with the motion and courts refuse to consider affidavits supportive of facts referenced in an opening brief."  *Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *3 (citing *Exceptional Mktg. Grp. v. Jones*, 749 F. Supp. 2d 1352, 1359-60 (N.D. Ga. 2010)); *see also* FED. R. CIV. P. 6(c) ("Any affidavit supporting a motion must be served with the motion."); *see also*

Defendant's employee (Galofaro Decl ¶ 6; Doc. 26-1 ("Galofaro Supp. Decl.") ¶ 5), had never been authorized to accept service on Defendant's behalf (*id.*), and "may be employed by Regus." (Galofaro Supp. Decl. ¶ 5). In comparison with Fantich's detailed declaration, Galofaro's declarations provide little in the way of factual information about Williams despite being apprised by the return of service that she was one of the individuals Plaintiffs purported to serve. (Doc. 7 at 1). Even in her more detailed supplemental declaration, Galofaro does not indicate how Williams knew that Defendant maintained an office at the 2000 Town Center location, much less how she knew that Novak was unavailable or why she felt comfortable communicating this fact to Fantich. Nor does Galofaro rebut Fantich's testimony about her "managerial or supervisory responsibility," such as being in charge of the office, speaking directly with Fantich upon his arrival and asking him "who [he] was there to see" (*id.* ¶ 48), representing that she could accept "anything on [Novak's] behalf" (*id.* ¶ 52), and confirming that she did so "all the time, every day" (*id.* ¶ 55).

---

LR 7.1A(1), NDGa ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority. If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law."). Affidavits filed with a party's reply brief may be properly considered where they deal with issues raised by the opposition's response to the motion. *Exceptional Mktg. Grp.*, 749 F. Supp. 2d at 1360. Here, the Court notes that Plaintiffs have not moved to strike the supplemental declaration. Further, Galofaro's supplemental declaration arguably addresses the factual circumstances surrounding Williams' role at Defendant's registered "virtual" office as set out by Fantich's declaration attached to Plaintiffs' response brief. (*See* Fantich Decl. ¶¶ 42-47). Therefore, the Court will consider it.

Defendant has not presented any testimony from either Williams or Novak himself, which may have otherwise lent factual support to Galofaro's assertions that Williams was neither an employee nor authorized to receive service. *See, e.g.*, *Nesmith v. Landmark Dodge, Inc.*, 691 S.E.2d 240, 241 (reversing trial court's dismissal based on insufficient service and noting that the defendant "could have presented an affidavit from [the registered agent] or [his assistant who received service] to the effect that [the assistant]'s responsibilities were solely ministerial and that she lacked any supervisory or managerial responsibilities with [the defendant]") (citing *Murray*, 442 S.E.2d at 796-97); *cf. Holmes & Co. v. Carlisle*, 658 S.E.2d 185, 188 (Ga. Ct. App. 2008) (service on administrative assistant was improper where the defendant presented the administrative assistant's "unequivocal testimony that she never told the sheriff that she was authorized to accept service on behalf of [the corporation]" and sheriff testified that he had no recollection of asking her whether she was so authorized).

Defendant attacks Fantich's declaration, stating that he "does not describe the appearance of Ms. Williams or indicate who Ms. Williams is employed by" and "provides no [] details about the office space[.]"  (Doc. 6 at 8).  However, as the *Northwestern* and *Murray* decisions cited above demonstrate, such details are not necessary where the evidence indicates that the individual accepting service maintained a "position [] such as to afford reasonable assurance that [s]he will

inform [her] corporate principal that such process has been served[.]" *Murray*, 442 S.E.2d at 797. Contrary to Defendant's assertions, Fantich's declaration is supportive of such a finding with respect to Williams. Moreover, as discussed above, Defendant's own evidence fails to meet its burden to demonstrate that Williams was not authorized to accept service in light of Fantich's evidence to the contrary. As such, in attempting to demonstrate that service was defective, Defendant has failed to present " 'evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit.' " *Murray*, 442 S.E.2d at 796-97 (quoting *Patterson v. Coleman*, 311 S.E.2d 838, 839 (Ga. 1984) (declining to set aside default based on improper service despite marshal's failure to identify the defendant as the person he served and evidence showing he was served at the wrong address)).

Defendant argues, however, that "Williams is not an employee or agent of Equity Experts" (Doc. 26 at 8), and Galofaro testified that Williams "appears" to be an employee of Regus, the company who operated Defendant's virtual office. (Galofaro Decl. ¶ 6). Regardless of Williams's official title, Fantich's testimony demonstrates that Williams both held herself out as an individual who was "in charge of the registered office[,]" who could assist Fantich in locating Defendant, who was "authorized to accept anything" on Novak's behalf, and who accepted service "all the time, every day" (Fantich Decl. ¶¶ 47-52, 55). Her official title is simply not

important in comparison to Plaintiffs' unrebutted evidence of the representations she made to Fantich.  Defendant must do more than simply present evidence she was not an official employee; it must present evidence "such that there was no reasonable assurance that she would be responsible enough to inform" Novak or another corporate principal of service.  *Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *21, n. 3.

Moreover, Fantich testified that after serving process for 21 years, he had "become familiar with Regus and other operators of 'virtual offices,' " and asserted that "[t]he employees of the virtual office companies are there to make sure that communications received are passed on to a company, like Equity Experts, that uses the virtual office." (Fantich Decl. ¶¶ 43, 46).  In light of that testimony, it would not seem out of the ordinary for an employee of a virtual office company to also be authorized to accept service on behalf of the occupants of its offices.  Defendant has presented no testimony concerning Williams's role to rebut Fantich's declaration, aside from Galofaro's conclusory assertions that she is not an employee and was not authorized to accept service.  Under these circumstances, Defendant still fails to rebut Plaintiffs' evidence that Williams was an individual authorized to accept service.

The Court therefore finds that, in weighing the evidence, Plaintiffs have presented evidence supportive of their contention that they effected service on Defendant by properly serving an individual authorized to accept service, which

Defendant fails to rebut. *See Henderson*, 932 F.2d at 1412 (reversing district court's dismissal based on insufficient service and finding that the defendant's accountant, who was not the registered agent or a partner, was authorized to receive service on behalf of the partnership despite his own affidavit stating he was not so authorized); *Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *20-21, n. 3 (service on administrative manager was sufficient where the defendant "never present[ed] evidence of [the administrative manager's] position or argues [her] position within NCS was such that there was no reasonable assurance that she would be responsible enough to inform the corporate principal" and the defendant "never submit[ted] any Affidavit from [the administrative manager] indicating whether she accepted service of Plaintiff's Complaint on behalf of NCS"); *Russell v. Muscogee Cty. Sch. Dist.*, 800 S.E.2d 7, 10 (Ga. Ct. App. 2017) (reversing trial court's dismissal based on insufficient service where process server left copy of summons and complaint with a human resources assistant for the school district); *Nesmith v. Landmark Dodge*, 691 S.E.2d 240, 241 (Ga. Ct. App. 2010) (reversing trial court's dismissal for insufficient service because the defendant's evidence did not demonstrate that its administrative assistant was not authorized to accept service on behalf of registered agent); *Baughan*, 524 S.E.2d at 538 (service on secretary was sufficient where "the process server based service on the alleged express authority of an individual to accept documents on her principal's behalf"); *Southwest Community Hosp. & Med.*

18

*Ctr., Inc. v. Thompson*, 301 S.E.2d 501, 503 (Ga. Ct. App. 1983) (affirming denial of motion to set aside default where service was made on hospital administrator's secretary where evidence showed that "[s]he regularly accepted service on the corporation and was knowledgeable of the procedures to be used when service did occur").

Defendant does not cite to any Georgia decisions supportive of its contention that Williams could not have been authorized to accept service. Nor does Defendant address the authority referred to by Plaintiff, which Defendant discards as " (inapplicable) Georgia case law." (Doc. 26 at 8). The Court notes that several Georgia cases have found service improper upon individuals who are not registered agents or corporate officers, but those decisions are factually distinguishable from the case at bar. For example, in *Whatley's Interiors, Inc. v. Anderson*, 336 S.E.2d 326 (Ga. Ct. App. 1985), the court found that service on a defendant-corporation was improper where service papers were left with a corporate officer's assistant. *Id.* at 328. The court reasoned that "the record contains no indication that [the assistant] performed any duties or was charged with any responsibilities within the corporation other than those of a personal secretary/typist[.]" *Id.* Those facts are distinguishable from circumstances where, as here, there is evidence indicating that the individual purportedly authorized to receive service spoke directly to the process server, asked

him who he was there for, told him she could accept service on the registered agent's behalf, and confirmed that she regularly did so.

Other Georgia courts have found similarly where, unlike here, the defendant presented sufficient evidence that the individual who accepted service did not have the requisite responsibility or did not make manifestations to the effect that he or she was authorized to accept service. *See, e.g.*, *Aikens v. Brent Scarbrough & Co.*, 651 S.E.2d 214, 217-18 (Ga. Ct. App. 2007) (trial court did not abuse discretion by setting aside default judgment where the assistant testified she did not receive the papers and the process server testified that "to the best of his recollection," he remembered the assistant calling the principal to confirm she had authority, but both principal and assistant both testified the phone call did not occur); *Bowers v. Economation, Inc.*, 431 S.E.2d 420, 422 (Ga. Ct. App. 1993) (affirming trial court's decision to set aside judgment for insufficient service where secretary with whom service papers were left testified that she "never had supervisory or managerial responsibilities in the course of her employment[,]" and there was no testimony that she was authorized to accept service).

In sum, the Court finds that Defendant has failed to rebut Plaintiffs' *prima facie* evidence of proper service.

## III.   Defendant's Additional Arguments

Defendant makes several additional arguments raised for the first time on reply and in response to Plaintiffs' sur-reply.  The Court finds these later-raised arguments unpersuasive.  For one, Defendant argues on reply that service was insufficient because there is no evidence Fantich is a "certified process server" as described in O.C.G.A. § 9-11-4(c)(5).  (*See* Doc. 26 at 3-4 (citing *Gamlins v. A.E. Roberts & Assocs.*, 564 S.E.2d 29, 31 (Ga. Ct. App. 2002)).  However, O.C.G.A. § 9-10-94 authorizes a defendant subject to O.C.G.A. § 9-10-91, i.e., Georgia's long arm statute, to be served "with a summons outside the state in the same manner as service is made within the state by any person authorized to make service by the laws of the state . . . in which service is made[.]"  As Plaintiffs point out in their sur-reply, service in Michigan may be effected by "any legally competent adult who is not a party or an officer of a corporate party[.]"  *Abick v. Mich.*, 803 F.2d 874, 876 (6th Cir. 1986); *accord Boyt v. Drakos*, No. 282653, 2009 Mich. App. LEXIS 1707, at *3 (Mich. Ct. App. 2009); *see also Samay v. Som*, 446 S.E.2d 230, 231 (Ga. Ct. App. 1994) ("[W]e decline to accept appellant's contention that process served pursuant to O.C.G.A. § 9-10-94 must always be served by a person authorized to serve process under O.C.G.A. § 9-11-4(c).").  Because Fantich testified that he met those requirements (*see* Doc. 25-2 ¶ 2), service was proper under Georgia law.[8]

---

[8] The Court also notes that the facts of Defendant's only cited authority for this proposition, *Gamlins v. A.E. Roberts & Assocs.*, are distinct from those underlying the present case.  564 S.E.2d at 30.  That case addressed service on a Georgia

Defendant's argument, raised for the first time in response to Plaintiffs' sur-reply, that Georgia's long-arm jurisdiction is inapplicable fails.  The exercise of a personal jurisdiction over a nonresident corporation, such as Defendant, "must [] be appropriate under the state long-arm statute[.]"  *Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).  In the Complaint, Plaintiffs specifically allege that Defendant "routinely files documents upon the property records throughout the United States, and specifically in various Georgia counties, in an effort to collect debts alleged owed to its clients."  (Doc. 1 ¶ 23).  Plaintiffs also allege, *inter alia*, that Defendant attempted to collect a debt associated with their homeowner's association in Georgia where they resided (*id.* ¶¶ 31, 33), filed a lien against their Georgia property (*id.* ¶¶ 42, 46), and called Mr. Cross at his home multiple times (*id.* ¶¶ 83-96).  These allegations satisfy the "tortious act" and "transacting business" prongs of Georgia's long-arm statute.  *See* O.C.G.A. § 9-10-91(1)-(3); *see, e.g.*, *Hampton-Muhamed v. James B. Nutter & Co.*, Civil Action No. 1:13-CV-03659-CC-LTW, 2015 U.S. Dist. LEXIS 190340, at 11-12 (N.D. Ga. Feb. 20, 2015) (sending correspondence allegedly violative of the FDCPA subjected defendant to long-arm jurisdiction by way of the "tortious act" prong), *adopted by*

---

corporation under O.C.G.A. § 9-11-4(e)(1).  *Id.*  The instant case, as Defendant concedes, concerns service under O.C.G.A. § 9-11-4(e)(7).  (Doc. 31 at 6-7; *see also* Doc. 28-1 at 3).

2015 U.S. Dist. LEXIS 190336 (N.D. Ga. Mar. 19, 2015); *Bailey v. Clegg*, 1991 U.S. Dist. LEXIS 21591, at *4 (N.D. Ga. June 14, 1991) (personal jurisdiction in Georgia existed where "defendant's communications in the forum state comprise the heart of defendant's business and are the precise subject matter of this action pursuant to the FDCPA").  Plaintiffs having established long-arm jurisdiction over Defendant on the face of their Complaint, Defendant was required to controvert those allegations, but Defendant has not done so.  *Performance Sys. Grp., Inc. v. Kroy IP Holdings, LLC*, Civil Action No. 1:11-CV-02161-RWS, 2012 U.S. Dist. LEXIS 118725, at *6-8 (N.D. Ga. Aug. 21, 2012) (explaining the defendant's burden to make a showing of the inapplicability of the long-arm statute after the plaintiff has established a *prima facie* showing of the statute's applicability) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).

In a footnote contained in its reply, Defendant also argues that Fantich's declaration is not executed as required by 28 U.S.C. § 1746.  (Doc. 26 at 5, n. 3).  This argument likewise fails.  Under 28 U.S.C. § 1746, a declaration may be considered with the same force and effect as an affidavit so long as it is signed and dated and includes language in substantially the following form:  "I declare (or certify, verify, or state) under penalty or perjury . . . that the foregoing is true and correct.  Executed on (date).  (Signature)."  Here, Fantich's declaration contains substantially identical language to the statute and ends with an electronic, typed

signature.  (*See* Doc. 25-2).  This Court has held that electronic signatures including the phrase "under the penalty of perjury" are sufficient under 28 U.S.C. § 1746. *Tischcon Corp. v. Soundview Commc'ns, Inc.*, Civil Action No. 1:04-CV-524-JEC, 2005 WL 6038743, at *3 (N.D. Ga. Feb. 15, 2005); *see also Consumer Fin. Prot. Bureau v. Universal Debt & Payment Sols., LLC*, Civil Action No. 1:15-CV-0859-RWS, 2019 U.S. Dist. LEXIS 46492, at *32 (N.D. Ga. Mar. 21, 2019) (declining to strike declaration signed by typewritten signature because declarant "has evinced his intention to submit sworn declarations, which the Court will accept as such") (citing *id.*, 2005 WL 6038743, at *4).  Fantich's declaration was therefore validly executed under 28 U.S.C. § 1746.

Finally, Defendant argues for the first time on reply that Plaintiffs' return of service on Williams is defective because the date next to Fantich's signature is blank. (Doc. 26 at 9-10).  In addition to contending that failure to raise this argument with Defendant's the original motion constitutes waiver, Plaintiffs argue that Fantich's declaration provides a valid amendment of the proof of service under Rule 4(l)(3) in the event it was defective.  (Doc. 28-1 at 3).  Defendant did not respond to Plaintiffs' arguments regarding its return of service in its response to the sur-reply, so this argument is waived.[9]  Moreover, Fantich testified in his declaration, dated December

---

[9] Defendant also argues, for the first time in its response to Plaintiffs' sur-reply, that Fantich's declaration contains "inadmissible hearsay with no evidentiary value whatsoever and should be stricken and disregarded."  (Doc. 31 at 11).  This argument

19, 2018, that he served Williams on March 28, 2018.  (Doc. 25-2 ¶¶ 8, 37, 53). Defendant's argument that Plaintiffs' return of service with respect to his service of Williams therefore fails.

## IV.   <u>Good Cause Does Not Support Defendant's Motion</u>

Defendant has not presented any other argument, aside from insufficient service of process, in support of its motion.  The Court recognizes that default is a drastic remedy and acknowledges the general preference for deciding matters on their merits.  *Worldwide Web Sys., Inc.*, 328 F.3d at 1295.  However, the Court finds that remedy is appropriate considering Defendant's delay in timely defending its case and the prejudicial effect of that failure on Plaintiffs.

Plaintiffs filed this action on September 28, 2017.  (Doc. 1).  On the same day, the Clerk issued summons to Defendant at its registered address.   (Doc. 2). Consistent with the undersigned's discussion above, Plaintiffs properly served Defendant at its registered address on March 28, 2018.  (Doc. 7).  Consequently, Defendant was required to answer the Complaint no later than April 18, 2018.  *See* FED. R. CIV. P. 12(a)(1)(A) (requiring a defendant to answer within 21 days of being

---

is also waived, and the Court declines to consider it.  *See, e.g.*, *Jordan v. Wash. Mut. Fin. Inc.*, Civil Action No. 1:11-CV-2497-RWS, 2013 U.S. Dist. LEXIS 143502, at *11 (N.D. Ga. Oct. 3, 2013) (declining to consider argument raised for first time apart from original motion) (citing *United States v. Ga. Dep't of Nat. Res.*, 897 F. Supp. 1464, 1471 (N.D. Ga. 1995) ("This court will not consider arguments raised for the first time in a reply brief.")).

served with the summons and complaint absent waiver of service).  On July 3, 2018, the undersigned entered an Order directing Defendant to file a response to Plaintiffs' motion for default and directing the Clerk to mail a copy of the Order to Defendant. (Doc. 13 at 2).  Despite these attempts to apprise Defendant of the action against it, Defendant did not appear at the default judgment hearing conducted on August 23, 2018.  (Docs. 14, 17).  Defendant made no appearance in this case until December 2018, after the undersigned issued an R&R granting in part Plaintiffs' motion for default judgment, whereupon Defendant filed objections to the R&R and answered Plaintiffs' Complaint.  (Docs. 20, 21, 23).  Defendant has presented no reasons for its delay aside from its argument regarding insufficient service.

Given the substantial delay as reflected by Defendant's failure to timely defend this action until almost eight months after being served, Defendant's failure to timely engage in this case constitutes a "reckless disregard for the judicial proceedings."  *See Carlisle*, 2015 U.S. Dist. LEXIS 88186, at *25 (finding reckless disregard where the defendant offered no explanation for its failure to file responsive pleadings aside from its own carelessness); *Insituform Techs.*, 588 F. Supp. 2d at 1359 (defendant exhibited "an intentional or reckless disregard for the judicial proceedings" by ignoring the actions against it after being notified multiple times of their pendency "on several different occasions").  Under such circumstances, "the

court need make no other findings in denying relief." *Compania Interamericana*, 88 F.3d at 951-52.

However, the Court also notes that Plaintiffs would be prejudiced by setting aside the default. If the Court vacated the default, Plaintiffs would be required to begin prosecuting its claims against Defendant almost eight months after they properly served it despite having expended substantial efforts at preparing briefing and evidence in support of default judgment and having presented testimony at their default judgment hearing. *See, e.g.*, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007) (finding prejudice where defendant did not move to set aside default judgment until "over three and a half months after it was served with process, and over one month after the default judgment was entered"). In the briefing on this motion, Defendant presents no arguments as to whether it has meritorious defenses aside from its argument for insufficient service of process, which the Court has already addressed. Nor does Defendant flesh out the defenses in its Answer in order to explain why those are meritorious under a good cause standard. (Doc. 23). And despite being properly served and notified several times of this action by the Court, Defendant did not act promptly to remedy the entry of default, instead waiting almost eight months to file the instant motion. *See, e.g.*, *Sloss Indus. Corp.*, 488 F.3d at 935 (denying Rule 60(b)(1) motion and finding the defendant did not act promptly where it failed to move to set aside the default judgment until over three and a half months

after it was served) was not prompt); *AMEX Assur. Co. v. Phelps*, Civil Action No. 1:14-CV-515-TWT-LTW, 2015 U.S. Dist. LEXIS 28501, at *5 (S.D. Ga. Mar. 9, 2015) (finding that the defendant did not act promptly to set aside default where she failed to respond for over five months after default was entered), *adopted by* 2015 U.S. Dist. LEXIS 87600 (N.D. Ga. July 7, 2015).  Even to the extent Defendant may have changed its registered mailing address for service after this case ensued (*see* Doc. 22 at 2), it was "not relieved of the responsibility of keeping track of its mail." *Rasmussen v. W.E. Hutton & Co.*, 68 F.R.D. 231, 235 (N.D. Ga. 1975) (finding no good reason for the defendant's delayed response to the complaint despite an address change after the summons and complaint were mailed).

Under these circumstances, the Court determines that good cause under Rule 55(c) does not support Defendant's motion to set aside the default.

## <u>CONCLUSION</u>

It is **RECOMMENDED** that Defendant's Motion To Set Aside Clerk's Entry Of Default (Doc. 22) be **DENIED.**  If the District Judge adopts this R&R, it is further **RECOMMENDED** that the Clerk be **DIRECTED** to docket the undersigned's previous R&R (Doc. 18) on Plaintiffs' motion for default judgment.

The Clerk is directed to terminate reference of this case to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this 17th day of April, 2019.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge